**[J-66-2022] [MO: Todd, C.J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| DAVID L. BROWN, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF KATHRYN A. BROWN, DECEASED | : | No. 6 WAP 2022 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court entered |
| | : | September 1, 2021 at No. 337 CD |
| v. | : | 2020, reversing the Order of the |
| | : | Court of Common Pleas of Venango |
| | : | County entered February 28, 2020 at |
| CITY OF OIL CITY | : | No. 589-2016 and remanding. |
| | : | |
| | : | ARGUED: October 26, 2022 |
| v. | : | |
| | : | |
| | : | |
| FRED L. BURNS, INC. | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SCOTT AMSDELL, INDIVIDUALLY, AND MACON, INC., AND HAROLD BEST, INDIVIDUALLY, AND STRUXURES, LLC | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: HAROLD BEST, INDIVIDUALLY, STRUXURES, LLC, AND FRED L. BURNS, INC. | : | |
| | : | |

**DISSENTING OPINION**

**JUSTICE MUNDY**                    **DECIDED: MAY 16, 2023**

I agree with much of the Majority's exposition of the analytical legal background undergirding the interpretive question at hand but disagree with its conclusions respecting that interpretation. That is, as more fully explained herein, I interpret the relevant sections of the Restatement to indicate the latency of a dangerous condition is an integral element

of foreseeability, which in turn is a prerequisite to a contractor's liability to third parties. Of note, as acknowledged by all parties, the relevant sections of the Restatement (Second) of Torts employ language this Court adopted through the Restatement (First) of Torts in *Prost v. Caldwell Stores*, 187 A.2d 273 (Pa. 1963). The source of the principles espoused in these sections stem from the seminal case of *MacPherson v. Buick Motor Company*, 217 N.Y. 382 (1916). The central principal advanced in *MacPherson* was that under certain circumstances, the absence of a contractual relationship, duty, or privity will not preclude liability of a manufacturer of defective chattels for injuries incurred by an ultimate user of the chattel. Two of those circumstances, which are not at issue in this appeal, include that the manufacturer knows or has reason to know of the dangerous condition, and that the dangerous condition resulted from its lack of care or negligence. *MacPherson*, *supra* at 391.[1] In this case, we consider whether a third condition, that it is foreseeable by the contractor that the injured party as a potential user/possessor could be harmed by the dangerous defect, is also required to predicate liability. We further consider the role the latency or patency of the dangerous condition has on any foreseeability requirement. The Majority concludes that latency is not an essential

---

[1] The Majority recognizes that the parties do dispute when the work was completed and if it was accepted by Oil City, but that those factual disputes do not impact the issue accepted for review. Maj. Op. at 9 n.6. It is unclear from the agreed facts whether Appellants knew of the defect and dangerous condition, or should have known, due to its negligent design or execution of its repairs and reconstruction of the stairs at the time it relinquished possession and control to Oil City. The defect apparently manifested itself within a short time, and Appellants were so advised. It is upon this basis that the question of knowledge and our current issue respecting the role of latency/patency in foreseeability are predicated. However, it begs the question of when the issues of knowledge of defect and dangerous condition, foreseeability, and latency/patency are to be considered. *See e.g., Sanchez v. Swinerton & Walberg Co.*, 47 Cal.App.4th 1461, 1471 (opining an initially latent defect becomes patent upon discovery). For the purposes of this case, we accept the trial court's finding that the dangerous condition was patent, and we focus on whether latency is a necessary component of foreseeability and thus a legal requirement to extend a contractor's liability to third parties under the Restatement.

element of foreseeability.  Maj. Op. at 2.  I disagree.  The law of this Commonwealth does not impose liability upon possessors of land for injuries to invitees from open and obvious dangerous conditions.  See discussion of *Carrender v. Fritterer*, 469 A.2d 120 (1983) *infra*.  Neither does it impose upon contractors any greater obligation to foresee that an injured third party will ignore such open and obvious dangers.

Section 385 of the Restatement (Second) of Torts addresses the liability of a party erecting or repairing a structure on behalf of a possessor of land after the work has been completed and accepted.  The section states that the rules are the same as those for manufacturers and independent contractors.  Those rules are stated in Sections 394-398 and 403-404 respectively.[2]

Thus, as the Majority explains, it is the language and import of Sections 394 and 398 that we must consider in answering the question presented.  I set forth those sections herein.

> § 394 Chattel Known to be Dangerous
>
> The manufacturer of a chattel which he knows or has reason to know to be, or to be likely to be, dangerous for use is subject to the liability of a supplier of chattels with such knowledge.

Restatement (Second) of Torts § 388 (1965).

> § 388 Chattel Known to be Dangerous for Intended Use
>
> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

---

[2] Section 404, in turn, refers to the rules pertaining to manufacturers of chattels, *i.e.* sections 394-398.

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, **and**

(b) **has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition**, **and**

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*Id.* § 388 (emphasis added).

§ 389 Chattel Unlikely to be made Safe for Use

One who supplies directly or through a third person a chattel for another's use, knowing or having reason to know that the chattel is unlikely to be made reasonably safe before being put to a use which the supplier should expect it to be put, is subject to liability for physical harm caused by such use to those whom the supplier should expect to use the chattel or to be endangered by its probable use, and **who are ignorant of the dangerous character of the chattel or whose knowledge thereof does not make them contributorily negligent**, although the supplier informed the other for whose use the chattel is supplied of its dangerous character.

*Id.* § 389 (emphasis added).

The highlighted language of Sections 388(b) and 389, in my view, makes clear that latency of the dangerous condition is a third predicate condition to imposing liability outside of the privity relationships bypassed by the reasoning in *MacPherson*. The trial court's findings in this matter established that the danger at issue was known and obvious to a degree that reasonable minds could not differ, making the issue appropriate for summary judgment. Trial Ct. Op., 10/25/19, at 2-3; Trial Ct. Op., 5/13/20, at 9-10. For the purposes of this appeal, we must accept that finding.[3]

---

[3] As the trial court noted, in certain cases it may be for a jury to decide whether a dangerous condition is patent or latent. Trial Ct. Op., 5/13/20, at 9.

The phrasing of the question accepted for review focuses on the knowledge of the possessor of land, Oil City. [4] However, it is not merely the subjective knowledge of Oil City that is implicated here, nor does the Majority constrain its analysis and holding in this regard. The fact that the danger was found to be obvious implicates the knowledge of the third party as per the emphasized language in the above cited sections. As the Majority explains, part of the disparate interpretation given to this issue by the Superior and Commonwealth Courts[5] stems from the language of comment c to Section 385.

> A manufacturer of a chattel who puts it upon the market knowing it to be dangerous and **having no reason to expect that those who use it will realize its actual condition** is liable for physical harm caused by its use (see § 394). As the liability of a servant or an independent contractor who erects a structure upon land or otherwise changes its physical condition is determined by the same rules as those which determine the liability of a manufacturer of a chattel, it follows that such a servant or contractor who turns over the land with knowledge that his work has made it dangerous in a manner **unlikely to be discovered by the possessor** is subject to liability both to the possessor, and to those who come upon the land with the consent of the possessor or who are likely to be in its vicinity.

Restatement (Second) of Torts § 385, cmt. c (emphasis added).

As the Majority explains, interpretation of the language of the portions of Restatements adopted by this Court as accurate pronouncements of the common law in this Commonwealth are not subject to statutory interpretation rules but dependent on the purpose, reasoning, and policy considerations attending their adoption. *Tincher v.*

---

[4] The question reads as follows: "Whether an out-of-possession contractor cannot be subject to liability under Section 385 of the Restatement of Torts for injuries to third-parties where the dangerous condition of the structure erected by the contractor is **well-known to the possessor of land**?"

[5] *Gilbert v. Consolidated Rail Corp.*, 623 A.2d 873 (Pa. Cmwlth. 1993); and *Gresik v. Pa. Partners, L.P.*, 989 A.2d 344 (Pa. Super. 2009) and their progeny. The Majority Opinion provides a thorough summary of these holdings, so I do not repeat those analyses here.

*Omega Flex, Inc.*, 104 A.3d 328, 353-54 (Pa. 2014). In evaluating this purpose, reasoning, and policy, the Majority emphasizes the prerequisite conditions mentioned above, *i.e.*, knowledge of the dangerous condition and the lack of care or negligence in creating it. Where my view differs from the Majority is in the contours it creates concerning foreseeability.

The Majority interprets the language of Section 388(b), not as one of a list of three preconditions for liability, but as a factor, if present after potential liability has been established by virtue of negligence and knowledge, that triggers the additional duty to warn. Maj. Op. at 29. Similarly, the Majority interprets Section 389 as rendering latency/patency a non-factor to third party liability because it states that warning of the dangerous character will not excuse liability to those still ignorant of that dangerous character. *Id.* I find these interpretations strained in terms of the plain meaning of the language, and ultimately inconsistent with the reasoning behind our adoption of the Restatement sections involved.[6]

I also disagree with the Majority's reliance on Section 395 as applicable to this case because it pertains to a chattel inherently dangerous if not properly made. Section 395 speaks to a manufacturer's knowledge of a dangerous condition, not foreseeability.

---

[6] The Majority's response that the issue of warnings as implicated in sections 388(c) and 389 address latent dangerous conditions and are not at issue in this case is one with which I agree. Maj. Op. at 30 n. 18. Respectfully, however, that response misses the point. First, those sections address "suppliers," not necessarily the manufacturer/contractor whose negligence is at issue and where the imposition of liability to third parties is at issue. The fact that there is a duty to warn of a latent dangerous condition of which the supplier is aware does not by some implication extend liability for patent dangerous conditions as that patency affects the manufacturer/contractor's foreseeability requirement. In some cases, the issue of a manufacturer or contractor warning of latent dangerous conditions may concern a duty of the manufacturer to the party with which it has privity, and thus in turn affect the relative liability between a manufacturer and a warned or unwarned supplier to an injured third party. But again, that is not implicated in this case where the dangerous condition was found to be obvious as a matter of law by the trial court. *See* n.7 infra.

For inherently dangerous products, the knowledge of the dangerous condition is imputed to the manufacturer when it knows that product is not properly made, *i.e.*, "he should recognize [the lack of reasonable care] as involving an unreasonable risk . . ." Restatement (Second) of Torts § 395. A defect in making a product that is not inherently dangerous will not necessarily create a dangerous condition. Only if a manufacturer is aware of a dangerous condition as opposed to a mere defect will liability to third parties attach. For inherently dangerous products, it is enough that the manufacturer knows it was defectively made. Nowhere in the case below did any party rely on the inherent dangerousness of the type of construction at issue. In any event, Section 395 does not negate the foreseeability requirements attendant to the latency/patency issue at hand whatever the basis for the contractor's knowledge of the dangerous condition may be.

As noted, the genesis of the principles implicated by the issues in this case are traced to Judge Cardozo's opinion in *MacPherson* where he stated:

> [T]he presence of a known danger, attendant upon a known use, makes vigilance a duty. We have put aside the notion that the duty to safeguard life and limb, **when the consequences of negligence may be foreseen**, grows out of contract and nothing else. We have put the source of the obligation where it ought to be. We have put its source in the law.

*MacPherson*, *supra* at 390 (emphasis added).

The issue of latency/patency of the known dangerous condition is grounded in this requirement of foreseeability. Where a known, negligently-caused, dangerous condition is allowed to be exposed to expected users, a manufacturer's liability will extend to those users where such harm is foreseeable. Dispensing with privity as a defense in these cases recognized that at the time of injury, the manufacturer was not in a position to specifically correct, warn, or mitigate the danger posed with respect to the injured party. Yet, where such injury was foreseeable because the dangerous condition caused by and

known to the manufacturer (or in the case of Section 395, inherent dangerousness of an improperly made chattel), was unlikely to be appreciated or realized by a foreseeable user, that inability to correct or mitigate would not preclude liability based on a more general duty than that premised on contractual duty or privity. The principles attendant to the *MacPherson* decision and its articulation in the Restatement did not impose foreseeability of injury where the dangerous condition was readily apparent, and any efforts or obligations of mitigation or avoidance of that danger was in the hands of others. *MacPherson* involved a defective wheel in an inherently dangerous product, which was not apparent to foreseeable users. *Id.* at 386. Accordingly, I disagree that "neither [Section 395] nor the *MacPherson* decision on which it is based, limits a manufacturer's liability to only chattels with latent defects." Maj. Slip Op. at 30. To the contrary, it is the latency of the dangerous condition that contributes to the foreseeability of harm to third parties.

Additionally, the Majority's position is antithetical to the law of this Commonwealth regarding the liability of a possessor of land to invitees upon the premises. In *Carrender v. Fritterer*, 469 A.2d 120 (1983) this court held the following.

> Thus, as is made clear by section 343A of the Restatement,
>
> > "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."
>
> Restatement [(Second) of Torts] § 343A. See *Atkins v. Urban Redevelopment Auth. of Pittsburgh,* 489 Pa. 344, 352–53, 414 A.2d 100, 104 (1980) ("the law of Pennsylvania does not impose liability if it is reasonable for the possessor to believe that the dangerous condition would be obvious to and discovered by his invitee"); *Palenscar v. Michael J. Bobb, Inc.,* 439 Pa. 101, 106–07, 266 A.2d 478, 480, 483 (1970) (same);

> *Repyneck v. Tarantino,* 415 Pa. 92, 95, 202 A.2d 105, 107 (1964) (same); *Kubacki v. Citizens Water Co.,* 403 Pa. 472, 170 A.2d 349 (1961) (same). A danger is deemed to be "obvious" when "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment." Restatement, supra, § 343A comment b. For a danger to be "known," it must "not only be known to exist, but ... also be recognized that it is dangerous and the probability and gravity of the threatened harm must be appreciated." *Id.* Although the question of whether a danger was known or obvious is usually a question of fact for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion. See Restatement, supra, § 328B comments c and d.

*Carrender v. Fitterer*, 469 A.2d 120, 123–24 (Pa. 1983).[7] The effect of the Majority's holding is to impose a more stringent foreseeability burden on a contractor than a possessor of the land.

Several jurisdictions have reached similar conclusions to that which the trial court adhered in this case. In *Sanchez, supra*, the California court concluded the dangerous condition the contractor created in allowing pooling of water on uncovered landings and stairwells was patent as a matter of law and "[t]he obvious nature of the defect would allow the owner and users to take steps to remedy the condition or to take precautions against injury." *Sanchez*, *supra* at 1471. "Inasmuch as the defective condition that was reasonably dangerous to life and limb was not latent, the contractor and subcontractor

---

[7] The Majority contends "the principles of *Carrender* remain relevant factors to be considered by the finder of fact in its ultimate apportionment of liability." Maj. Op. at 36 n.20. However, while the Court in *Carrender* stated, "Although the question of whether a danger was known or obvious is usually a question of fact for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion." *Carrender* supra at 124. As noted earlier, the trial court in this case made such a finding in its grant of summary judgment. The *Carrender* Court also explained Section 343A speaks to a possessor's lack of duty owed to an invitee for an obvious dangerous condition, and not to any basis for apportionment of fault under assumption of the risk or comparative principles. *Id. at 125.*

had no liability to a third person injured thereby after the owner's acceptance of the structure." *Id.* The Maryland Supreme Court in *dicta* stated:

> In following the modern trend, we hold that privity is not an absolute prerequisite to the existence of a tort duty. The duty of the architects and the builders in this case, to use due care in the design, inspection, and construction of this condominium extended to those persons **foreseeably** subjected to the risk of personal injury created, as here, by a **latent** and unreasonably dangerous condition resulting from their negligence.

*Council of Co-Owners Atlantis Condominium, Inc. v. Whiting-Turner Contracting Co.*, 517 A.2d 336, 343–44 (Md. 1986) (emphasis added). Finally, in applying Rhode Island law, the U.S. District Court, D. Rhode Island, held:

> Moreover, the strongest case for the rejection of the rule of nonliability is presented where, as here, the **negligently created defect is latent and concealed**, and renders the work done imminently dangerous to third persons whose subsequent use of the premises should reasonably have been foreseen.

*Pastorelli v. Associated Engineers, Inc.*, 176 F.Supp. 159, 167 (D.C.R.I. 1959) (emphasis added). While these decisions are not binding upon this Court and, in some instances, involve *dicta*, they do illustrate the nexus between latency of a dangerous condition and the foreseeability by a contractor of harm occurring from its negligently created dangerous condition. The duty imposed upon manufacturers, and by extension contractors, to third parties by *MacPherson* and the Restatement of Torts requires three elements; the negligent cause of a dangerous condition, the knowledge the dangerous condition exists, and the foreseeability of harm, which includes the question of whether the dangerous condition is patent or latent. In this case, the trial court determined the dangerous condition was patent as a matter of law, a finding we must accept in this appeal, meaning the requirement of foreseeability has not been established. A manufacturer or contractor is not expected to foresee that third parties will ignore patent dangers to their own

detriment. The practical effect of the Majority's position is to make manufacturers and contractors strictly liable under conditions where they are not in a position to correct or ameliorate against the dangers posed while possessors and third parties need not take any precautions against dangers of which they are aware. Because I do not believe this was the intent of *MacPherson* or the articulation of its principles through the Restatement as adopted in this Commonwealth, I respectfully dissent.